IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:

ALLISON NOELLE MARTYCHENKO,

    Debtor(s).

Chapter 13

Case No. 25-40428

## OPINION

This matter is before the Court on the Debtor's objection to the Trustee's Motion to Transfer Venue. The Debtor filed her Chapter 13 Voluntary Petition in the Southern District of Illinois on October 21, 2025. The Trustee asserts that venue is not proper in this District and seeks an order determining that venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1408 and Fed. R. Bankr. P. 1014(b) and transferring the case to that District.

Debtor objects to the Trustee's Motion, arguing that venue is proper in the Southern District of Illinois, because it was the Debtor's principal place of business during the 180 days prior to the petition date. An evidentiary hearing was conducted on December 17, 2025. The Debtor was the sole witness and provided testimony as to her various business ventures, location of her assets, and her former and current residence.

Although venue is typically clear for an individual debtor, the issue presented here arises in the context of a debtor holding multiple business interests that operate in different states. When such circumstances are before the Court, the determination of a principal place of business for venue purposes under the United States Code and the Federal Rules of Bankruptcy Procedure becomes a fact-intensive inquiry and correspondingly more complex. After considering the pleadings, the Debtor's testimony, and the arguments of the parties, the Court concludes that

venue is proper in this District, and that the interests of justice would not be served by transferring this case to the Western District of North Carolina.

## FACTUAL BACKGROUND

At a hearing on the matter, the Debtor testified as to the following facts:

**Residence/Domicile**

At the petition date, the Debtor resided at 3150 Dick Branch Rd., Robbinsville, North Carolina. The Debtor has resided at this address since May 2024.

**Non-business Assets**

The Debtor holds an undivided one-half interest in her residence located at 3150 Dick Branch Road, Robbinsville, North Carolina, which is valued at $200,000.00. In addition, the Debtor holds an undivided one-half ownership interest in a parcel of real property located in North Carolina valued at $27,950.00. The Debtor's schedules also disclosed three additional parcels of real estate as property in which the Debtor holds an equitable interest through the Debtor's membership interests in three limited liability companies.[1] The Illinois real estate held by one company is valued at $293,410.00, while the other company owns North Carolina real estate valued at $99,950.00.

The Debtor further possesses tangible personal property consisting of motor vehicles, recreational vehicles, and watercraft with an aggregate value of $26,091.50; personal and household goods valued at $18,500.00; and financial assets totaling $28,889.15. All such personal property is titled in, addressed to, physically located at, or otherwise associated with the

---

[1] The Elite Duo LLC (in which the Debtor holds a 50% ownership interest) holds title to two parcels of commercial real estate located in Mt. Vernon, Illinois valued at $173,410.00 and $120,000.00, respectively, before accounting for encumbrances. Wrig's Ridge LLC (in which the Debtor holds a 50% ownership interest), holds title to one residential real estate parcel located in Robbinsville, North Carolina, which is unencumbered with a fair market value of $99,950.

2

Debtor's residence or business interests in North Carolina. The Debtor holds no tangible personal property located in Illinois.

**Business Interests**

The Debtor testified that her business interests consist of rental real estate property sales and management businesses, conducted primarily through two limited liability companies, one of which is The Elite Duo, LLC d/b/a RE/MAX Elite ("ED LLC") and the other is Graham Property Management LLC ("GPM LLC"). The Debtor also holds a membership interest in Wrig's Ridge LLC.

**Business Interests – The Elite Duo, LLC**

The Debtor testified that, from May 2018 and continuing through the petition date, she has been a member of ED LLC, operating in Mt. Vernon, Illinois. The Debtor and her co-member, Robin Gelfius, operate ED LLC as a real estate sales and property management business under the d/b/a RE/MAX Elite. The Debtor holds a fifty percent membership interest in ED LLC. The Debtor testified that prior to and during the 180 days prior to the petition date (April 24, 2025 through October 20, 2025) ("Relevant Period"), ED LLC sold and managed real estate properties for third parties and as part of its inventory, held title to two parcels of commercial real estate located in Southern Illinois which were listed for sale continuing through the petition date. [2] The Debtor further testified that ED LLC intends to surrender both properties to the secured lender. ED LLC also maintains one real estate sale listing for a third party in addition to the two Illinois properties it owns. After surrender of the properties and termination of the remaining listing, ED LLC intends to cease operations.

---

[2] The two Illinois commercial real estate parcels owned by Elite Duo LLC are listed on the Debtor's Schedule A/B 1.2 and 1.3 at a 50% beneficial ownership interest.

The Debtor further testified that most of her income during the Relevant Period was derived from ED LLC as commissions. The Debtor testified that her work on behalf of ED LLC was in the nature of providing assistance to Robin Gelfius, most of which was performed remotely from the Debtor's residence in North Carolina.

No evidence was provided regarding the Debtor's management decisions for ED LLC.

**Business Interests – North Carolina LLCs**

The Debtor testified that at the petition date, she was a member of three limited liability companies located in North Carolina: Wrig's Ridge, LLC; Up the Creek Enterprises, LLC; and Graham Property Management, LLC.  Wrig's Ridge, LLC is not currently engaged in active business operations but holds title to residential real estate located in North Carolina; the Debtor holds a 50% interest in this company.  The Debtor also held a twenty-five percent membership interest in Up the Creek Enterprises, LLC, which per the Debtor's testimony has dissolved since this bankruptcy case was filed and had no business activity during the Relevant Period.

Debtor and her other partner, John Allen, formed Graham Property Management, LLC ("GPM LLC") in 2025 to operate a vacation rental real estate management company. The Debtor holds a 50% ownership interest in GPM LLC.  During the Relevant Period, GPM LLC managed two vacation rental properties located in Southern Illinois and eight rental properties located in North Carolina.

The Debtor's testimony regarding her activities for GPM LLC focused solely on the day-to-day operations of the company. The Debtor testified that she and her co-member performed all services provided by GPM LLC, either remotely from wherever the Debtor happened to be at the time, or in person at each property as may be needed.  In connection with these operational activities, the Debtor and Mr. Allen traveled to Southern Illinois frequently during the Relevant

Period to prepare the Illinois listings for rental or to maintain the properties. The Debtor testified that she spent most of July 2025 and August 2025 in Southern Illinois working on a GPM LLC property listing and made a total of five to six trips to Southern Illinois during 2025, each trip lasting anywhere from ten days to twenty-one days.

No testimony was provided regarding the specific location from which management decisions for GPM LLC were made, or where the books and records of GPM LLC are kept.

**Debtor's Other Business Interests**

The Debtor testified that outside of her limited liability companies, she also performed online marketing services for an unrelated real estate broker located in Southern Illinois during the Relevant Period.

The Debtor's hearing testimony focused frequently on the Debtor's post-petition business activities, as well as the present winding-down activities of ED LLC. The Debtor testified that she runs her businesses from her laptop, directing operations with her co-members and making decisions from whatever location she happened to be in when a decision needed to be made, including decisions made during the Relevant Period.

## DISCUSSION

Title 28, Section 1408(1) of the United States Code provides in relevant part:

> [A] case under title 11 may be commenced in the district court for the district—
> **(1)** in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district…

28 U.S.C. § 1408

Therefore, venue is determined by reviewing the facts that existed within the 180 days prior to commencement of the case to determine the district of the debtor's residence, domicile, principal place of business, or location of principal assets. The four statutory bases for venue are stated in the alternative, so satisfaction of any one of them is sufficient to establish proper venue. *In re Broady*, 247 B.R. 470, 472 (B.A.P. 8th Cir. 2000). This bankruptcy case was filed on October 21, 2025; therefore, the relevant time period to determine proper venue is April 24, 2025, to October 20, 2025. A debtor's choice of venue is presumed to be proper, and the party challenging venue has the burden of establishing improper venue by a preponderance of the evidence. *Matter of Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 792 (7th Cir. 1998)

Neither party has suggested that the Debtor's domicile or residence was located anywhere other than the Western District of North Carolina within the 180 days preceding filing. The Debtor testified that she has resided at her current North Carolina residence since May 2024. Thus, the Debtor's domicile and residence are undisputed and venue does not lay in Illinois under the domicile and residence tests of § 1408.

The evidence further establishes that, for purposes of 28 U.S.C. § 1408, the Debtor's principal assets are located in North Carolina. The Debtor testified that the aggregate value of the real property in which she holds an ownership interest (directly and equitably) in North Carolina totals $327,900.00, compared to $290,000.00 in real property located in Illinois. In addition, the Debtor's personal property, including motor vehicles, personal and household goods, and financial assets, are located exclusively in North Carolina.

Because venue cannot be established in this District based on the Debtor's domicile, residence, or principal assets, the Court turns to the remaining statutory basis under 28 U.S.C. § 1408, namely, whether the Debtor maintained her principal place of business in this District during the 180 days preceding the petition date, or for a larger portion of that period than in any other District. The Debtor contends that her principal place of business during the Relevant Period was Southern Illinois, based on her presence in Illinois during that period, and her decisions for her Illinois interests during those visits. The Chapter 13 Trustee, by contrast, asserts that venue is proper in the Western District of North Carolina, where the Debtor currently performs her work and remotely manages the properties, and where her assets are located.

Although venue for individual debtors is ordinarily determined by domicile or residence, the Court may consider where a debtor conducts her business activities in cases where, as here, the Debtor is actively engaged in ongoing business operations. The determination of an individual debtor's principal place of business is a factual inquiry that should be resolved by consideration of the totality of the relevant facts and circumstances.

In *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the Supreme Court examined the meaning of a corporation's "principal place of business" under 28 U.S.C. § 1332(c)(1), which defines a corporation's citizenship as the state of incorporation and "the State where it maintains its principal place of business." 559 U.S. 77, 80 (2010). There, the Supreme Court held that a principal place of business is the place "where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* It is the "nerve center" of the company, the place from which the company's decisions are actually controlled. *Id.* at 93–95. This test has been adopted by bankruptcy courts when evaluating principal place of business under § 1408. See *In re Crosby National Golf Club, LLC,* 534 B.R. 888, 890, 61 Bankr. Ct. Dec. (CRR) 108

7

(Bankr. N.D. Tex. 2015) (limited liability company); *In re Grand Dakota Partners,* LLC, 573 B.R. 197, 200 (Bankr. W.D. N.C. 2017) (limited liability company).

The Seventh Circuit's analysis of "principal place of business" under 28 U.S.C. § 1408 has developed primarily in the context of non-individual debtors, focusing on the location from which business activities are directed and controlled. *See In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788 (7th Cir. 1998). In *Peachtree Lane*, the Seventh Circuit clarified that the "principal place of business" is not necessarily where a debtor's assets are physically located, but where its major business decisions are made. *Id*. at 795. The court affirmed the bankruptcy court's use of the "nerve center" test, which is the place from which key operational, financial, and administrative decisions are made. *Id.* at 792.

The Northern District of Illinois has likewise applied the *Peachtree Lane* framework in *In re Magnolia Storage & Logistics, LLC*, No. 21-12475, 2022 WL 42038, at *2 (Bankr. N.D. Ill. Jan. 5, 2022). There, in a single-asset real estate Chapter 11 case, the court held that the debtor's principal place of business was in the Northern District of Illinois, notwithstanding that the debtor's sole asset, an apartment complex, was located in Texas. *Id*. at *3. The court emphasized that the debtor's business was managed remotely from Illinois, where the sole member and manager directed operations, maintained books and records, and made the debtor's significant business decisions, including those leading to the bankruptcy filing. *Id*. at *1. Because the locus of management and decision-making was Illinois, the court concluded that venue was proper in the Northern District of Illinois rather than in the district where the property was located. *Id.* at *3.

While *Peachtree Lane* arose in the context of a corporate debtor, its principles are instructive for individual debtors engaged in ongoing business operations. The focus of the

8

inquiry is, therefore, on where the debtor actually manages and directs her business affairs, rather than merely where property is located.

The Debtor engages in the business of real estate property management through several limited liability companies. The Debtor testified that during the Relevant Period, she was a member of two operating limited liability companies, one operating exclusively in Southern Illinois, the other operating in both Southern Illinois and in North Carolina. The Debtor testified that during the Relevant Period, she performed most of her services for ED LLC from North Carolina, and for GPM LLC from Southern Illinois. The Debtor also testified that she had made five to six trips to Southern Illinois during the Relevant Period for a total period of anywhere from fifty days to one hundred twenty-five days; these trips were for the purpose of dealing with GPM LLC's Illinois property operations. Further, the Debtor testified that she conducts her business affairs from her laptop, which is with her at all times, even on personal vacations. These facts are clear and directly supported by her testimony and were not controverted by other evidence.

Other facts brought out in testimony relate to post-petition or future events. These include the Debtor's intention through ED LLC to surrender the two Illinois properties and cease operations, as well as any future business activity of Graham Property Management, LLC or Wrig's Ridge, LLC. While relevant to understanding the entities' overall operations, these post-petition facts do not establish the Debtor's principal place of business during the 180-day period preceding filing.

Certain details remain unclear as to the 180-day period, however, including the precise allocation of the Debtor's time between Illinois and North Carolina activities and the extent of the Debtor's managerial actions in directing the activities of each company in which she held a partial

interest. No testimony was provided as to the organizational or managerial decisions for the various companies, such as where the Debtor keeps her books and records and whether the Debtor made major business decisions regarding the companies from locations other than Southern Illinois.

The Debtor's testimony clearly establishes that she was in Illinois frequently during the Relevant Period, and no evidence controverted the Debtor's statement that she was present in Illinois for the greater part of the 180-day period. While the Debtor remotely performed services for ED LLC while in North Carolina, those services were not quantified and the Debtor's testimony is not contradicted. The Debtor testified that she operated her business interests from her laptop, which was with her when she was in Illinois. John Allen, her co-member in GPM LLC, frequently traveled with her to Illinois and managed the company with her throughout the Relevant Period.   Although the Debtor was in the process of increasing her North Carolina business holdings during the Relevant Period, such action by itself is not dispositive of whether the Debtor made more business decisions from a location other than Southern Illinois than she did while she was in this District. None of the evidence produced showed that the Debtor made major business decisions from *any* location other than Southern Illinois during the Relevant Period.

Venue is presumed to be proper in the district where the debtor files, and the party challenging venue must prove that the case was incorrectly venued by a preponderance of the evidence. *Peachtree Lane,* 150 F.3d at 795.  The Debtor chose venue in Southern Illinois based on the location of her principal place of business, and the Trustee has not met his burden to challenge that choice by a preponderance of the evidence.

Having determined that venue is proper in the Southern District of Illinois, the Court must now decide whether transfer is appropriate under Bankruptcy Rule 1014 and 28 U.S.C. § 1412. Bankruptcy Rule 1014 provides:

> (a) Dismissal or Transfer.
>     *(1) Petition Filed in the Proper District*. If a petition is filed in the proper district, the court may transfer the case to another district in the interest of justice or for the convenience of the parties. The court may do so:
>         (A) on its own or on a party in interest's timely motion; and
>         (B) only after a hearing on notice to the petitioner, United States trustee, and other entities as the court orders.
>     *(2) Petition Filed in an Improper District*. If a petition is filed in an improper district, the court may dismiss the case or may transfer it to another district on the same grounds and under the same procedures as stated in (1).

FED. R. BANK. P. 1014.

Under Rule 1014(a)(1), the Court may transfer the case to a district where venue is proper; however, transfer is authorized only upon a showing that it is warranted in the interest of justice or for the convenience of the parties. *In re Peachtree Lane Assocs., Ltd.*, 188 B.R. 815, 831 (N.D. Ill. 1995)

Similarly, 28 U.S.C. § 1412 authorizes a court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Transfer under either provision is therefore discretionary and permitted only upon a showing that the statutory criteria are satisfied.

The burden of demonstrating that transfer is appropriate rests with the party seeking transfer. *In re Peachtree Lane Assocs., Ltd.*, 198 B.R. 272, 283 (Bankr. N.D. Ill. 1996), *aff'd*, 206 B.R. 913 (N.D. Ill. 1997), *aff'd sub nom. Matter of Peachtree Lane Assocs.,* Ltd., 150 F.3d 788 (7th Cir. 1998); *Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390–91 (2d Cir. 1990).

In evaluating whether transfer is justified, courts consider factors such as the location of creditors, the debtor, witnesses necessary to the administration of the estate, the location of

assets, and whether transfer would promote the efficient and economical administration of the estate. *In re Peachtree Lane Assocs., Ltd.*, 188 B.R. at 831. Transfer is not automatic, nor is it presumed, and it requires a developed factual record supporting the statutory criteria.

In considering whether transfer is warranted under Bankruptcy Rule 1014 and 28 U.S.C. § 1412, the Court notes that neither party presented evidence addressing the factors commonly considered in a transfer analysis. Although the testimony addressed the Debtor's business activities and travel between Illinois and North Carolina during the 180-day prepetition period, it did not identify where the Debtor's creditors are located, where key witnesses reside, or how transfer to any particular district would affect the administration of the estate. A review of the schedules filed in this case indicates that more of the Debtor's creditors are located in Southern Illinois than in North Carolina. At hearing, the Debtor's counsel argued that retaining administration of the Debtor's case in this District makes for more efficient administration of common creditor claims, as the Debtor's co-member in ED LLC has filed bankruptcy in this District and the duplicate payment of such claims is a consideration.

Nor did the evidence establish that transfer would enhance judicial economy, timeliness, or fairness. Accordingly, the record is insufficient to support a finding that transfer is appropriate under the "interest of justice" or "convenience of the parties" standards.

Accordingly, because venue is proper in this District and the record does not support transfer to another district, the Trustee's Motion is denied. A separate order shall enter.

ENTERED: March 2, 2026

/s/ Mary E. Lopinot
UNITED STATES BANKRUPTCY JUDGE